UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 0:18-cv-60995-KMM

ZACHARY PAUL CRUZ,

      Plaintiff,

v.

JUDGE KIM THERESA MOLLICA, et al.

      Defendant.

_____/

## JUDGE KIM THERESA MOLLICA'S MOTION TO DISMISS COMPLAINT

Defendant Judge Kim Theresa Mollica ("Judge Mollica"), pursuant to Rule 12(b)(6) and Rule 12(b)(1), Fed. R. Civ. P., hereby moves to dismiss the complaint filed by Plaintiff, Zachary Cruz ("Cruz") with prejudice.

### I.      Introduction

Cruz sues Judge Mollica, a sitting county court judge in Broward County, in her individual capacity. In his suit, he requests that this Court review and invalidate his conviction for trespassing and overturn Judge Mollica's decisions concerning his pre-trial bail. To the extent he believes Judge Mollica's decisions were improper or incorrect, his remedy lies with the state court system, not a federal court – a conclusion that, broadly speaking, is essential to the basic functioning of the state courts:

> It is a judge's duty to decide all cases within [her] jurisdiction that are brought before [her] . . . [her] errors may be corrected on appeal, but she should not have to hear that unsatisfied litigations may hound [her] with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principles and fearless decision-making but to intimidation.

<u>Pierson v. Ray</u>, 386 U.S. 547, 553-54 (1967). Cruz ignores these fundamental principles in bringing this lawsuit, and he further ignores the formidable legal obstacles that block his effort at every turn – lack of standing, mootness, Eleventh Amendment Immunity, the <u>Rooker-Feldman</u> doctrine and judicial immunity.

Even if the Court were to consider his claims, he fails to state a cause action for excessive bail under the Eighth Amendment. He also accuses Judge Mollica of wrongdoing related to his plea and sentence despite the fact she had nothing to do with either.

## II.   <u>Background and Alleged Facts</u>

Cruz sues Judge Mollica in her individual capacity under Section 1983. He alleges that Judge Mollica's decisions regarding the amount of his bail and the concomitant conditions of his pre-trial release violate the constitution, though he never specifies the nature of the constitutional violation: he generally mentions "the fourth, eight, and fourteenth" amendments at the beginning of his complaint, but omits any specific constitutional provision in the actual counts against Judge Mollica. (D.E. 1, pg. 2). He also attacks his plea and sentence but offers no basis whatsoever that Judge Mollica had anything to do with either. For relief, he seeks declaratory and injunctive relief against Judge Mollica, and though he fails to explain the exact nature of the relief he seeks, it is reasonably inferred that he challenges his plea, conviction and Judge Mollica's pre-trial decisions regarding bail.

### A.  Alleged Facts

On March 19, 2018, Cruz trespassed onto the grounds of Marjory Stoneman Douglas High School in Parkland, Florida. (D.E. 1, ¶ 12). Cruz is the brother of Nicholas Cruz, the perpetrator of a mass shooting at the school on February 14, 2018. (D.E. 1, ¶ 11). When deputies found

Cruz on the school property, they asked him why he was there, and Cruz, who no longer lived in Parkland (D.E. 1, ¶ 12), responded he was "trying to soak it all in." (D.E. 1, ¶ 16). Sheriff deputies arrested Cruz for trespassing. (D.E. 1, ¶ 17).

The next day, March 20, 2018, Cruz appeared before Judge Mollica for a bond hearing. (D.E. 1, ¶ 22). Pursuant to the Broward County Bond schedule, Cruz's initial bond was set at $25. (D.E. 1, ¶ 18). At the hearing, the State argued for a bond in the amount of $750,000.00. (D.E. 1, ¶ 22). Ultimately, after hearing the arguments from both the State and defense, Judge Mollica set Cruz's bond at $500,000.00 and ordered various conditions to the bond. (D.E. 1, ¶ 23); (See Order attached as Exhibit A)[1]. The premise of Judge Mollica's decision was the safety of the community, especially the community of students and parents of Marjory Stoneman Douglas High School. (D.E. 1, ¶ 23).

Cruz does not describe what steps, if any, he took to challenge the bond in State court. He does not allege that he filed a motion to reduce bond with the judge that ultimately presided over his case, nor does he allege he pursued a petition for habeas corpus, both of which are the appropriate means to challenge bond decisions under Florida law. See, Fla. R. Crim. P. Rule 3.131 (d)(1)-(3).

On March 29, 2018, Cruz entered a plea of no contest to the charge of Trespass on School Grounds and Judge Melinda Brown sentenced him to six months' probation pursuant to that agreement. (See plea form attached as Exhibit B and Court Disposition attached as Exhibit C). As the judgment and sentence demonstrate, Judge Mollica was not involved in Cruz's case beyond setting his bond.

---

[1] The docket and filings of another court may be judicially noticed on a motion to dismiss without converting it to a motion for summary judgment. Lowman v. City of Riviera Beach, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). Judge Mollica respectfully requests judicial notice of the judgment and sentence attached as Exhibit B.

In this suit, Cruz brings three counts against Judge Mollica, one count in her individual capacity alleging her bond determination was excessive and challenging the release conditions she imposed, and two counts, again in her individual capacity, related to the plea agreement he entered. In the latter two counts, Cruz explicitly requests that the Court set aside his negotiated plea and, by extension, his judgment and sentence. At no time does he even mention Judge Mollica, let alone explain what, if anything, she had to do with his plea deal and sentence. Regardless, as Cruz's judgment and sentence clearly shows, Judge Mollica – indisputably – had nothing to do with his plea agreement or judgment, so Cruz's inclusion of Judge Mollica in these two counts is an oversight.

## B. Bond procedure under Florida law

Chapter 903, Florida Statutes, is dedicated to the subject of bail. Section 903.046(1) declares that "[t]he purpose of a bail determination in criminal proceedings is to ensure the appearance of the criminal defendant at subsequent proceedings and to protect the community against unreasonable danger form the criminal defendant." § 903.046(1), Fla. Stat. Section 903.046(2) lists a number of factors a court must consider in determining whether to release a criminal defendant prior to trial – such as the nature and circumstances of the crime charged, the defendant's past and present conduct and the danger to the community and victims posed by the defendant's release. § 903.046(2), Fla. Stat. Beyond the enumerated factors, a judge is further empowered to consider "any other facts" she deems relevant. § 903.046(2), Fla. Stat.

The Florida Supreme Court incorporated the Legislature's policy on pretrial release and detention into the Florida Rules of Criminal Procedure. Every person who is arrested in Florida on state charges must be taken before a judge within 24 hours of his or her arrest for a first appearance proceeding. Fla. R. Crim. P. 3.130(a). Like section 903.046(2), Florida Statutes,

Rule 3.131(b)(2) states that at a defendant's first appearance, a court "shall . . . consider all available relevant factors to determine what form of release is necessary to assure the defendant's appearance," and if a bond is required, the court shall determine the amount.  Also like section 903.046(2), Rule 3.131(b)(2) affords the court considerable discretion to consider not only the enumerated factors, but "any other facts the Court considers relevant."

Pursuant to Rule 3.131(d)(1), a defendant may move the court having jurisdiction to try the case, or the circuit court if an appropriate trial judge is unavailable, to reduce the initial bond or modify the bond conditions.  If a trial court "fixes bail and refused its reduction before trial," Rule 3.131(d)(3) allows a defendant to pursue a habeas corpus petition seeking a bail reduction.

### III.   Argument

As explained more fully below, Cruz's complaint suffers from multiple flaws, all justifying dismissal, including a lack of jurisdiction, judicial immunity and a failure to state a cause of action.  Each of these arguments are addressed in separate sections below, beginning with the many reasons the Court is without jurisdiction to consider Cruz's claims.

### A.  Jurisdiction

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" United States v. Yeager, 303 F.3d 661, 664 (6th Cir.2002)(quoting Steel Co. v. Citizens For A Better Env't, 523 U.S. 83, 94 (1998)).  Of course, this Court may exercise subject matter jurisdiction over claims brought under Section 1983.  However, for the reasons more fully explained below, a lack of standing, mootness, Eleventh Amendment immunity and the Rooker-Feldman doctrine prevent this Court from exercising its jurisdiction over Cruz's lawsuit.

### 1.   Plaintiff's individual capacity claims are not cognizable

At the outset, Cruz improperly sues Judge Mollica in her individual capacity, despite seeking injunctive and declaratory relief.  Generally speaking, a plaintiff must bring suit against a "person" to state a claim under Section 1983 as opposed to a state entity.  See, 42 U.S.C. § 1983.[2]   An individual capacity suit "seeks to impose personal liability on government officials for actions she takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985).  In contrast, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).  Plaintiffs may sue "individual capacity defendants only for money damages and official capacity defendants only for injunctive and declaratory relief."  It is improper to sue a person in their individual capacities for injunctive and declaratory relief.  Ingalls v. U.S. Space & Rocket Ctr., 2015 WL 4528687, at *8 (M.D. Ala. July 27, 2015), aff'd, 679 Fed. Appx. 935 (11th Cir. 2017), citing, Brown v. Montoya, 662 F.3d 1152, 1161 n. 5 (10th Circuit).[3]

In this case, Cruz sues Judge Mollica in her individual capacity yet seeks injunctive and declaratory relief.   As Ingalls and the decisions and authorities it relies on establish, Cruz's

---

[2] Section 1983 provides in pertinent part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other *person* within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983(emphasis added).

[3] The Ingalls Court cites multiple opinions from other circuits for the proposition that injunctive and declaratory relief is not proper against an official sued individually:   Jones v. Buckner, 963 F.Supp.2d 1267, 1281 (N.D.Ala.2013) ("[S]tate officers may only be sued in their individual capacity for money damages under [§ 1983]."); Brown v. Montoya, 662 F.3d 1152, 1161 n. 5 (10th Cir.2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); Greenawalt v. Ind. Dep't of Corrs., 397 F.3d 587, 589 (7th Cir.2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity.")); Wolfe v. Strankman, 392 F.3d 358, 360 n. 2 (9th Cir.2004) (noting that injunctive and equitable relief were not available in § 1983 individual-capacity suits).

individual-capacity claims against Judge Mollica for injunctive and declaratory relief are not cognizable and must be dismissed.   Nonetheless, even if Cruz were to correct this error, and he sues Judge Mollica in her official capacity, the complaint would still be barred by multiple jurisdictional issues.

### 2.  Standing

The Constitution limits the judicial power of the federal courts to adjudications of actual "Cases" and "Controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60 (1992); Allen v. Wright, 468.U.S. 737 (1984).  To successfully allege a case or controversy, Plaintiff "must allege facts from which the continuation of the dispute may be reasonably inferred." Id. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Id.  A plaintiff has standing to seek declaratory and injunctive relief "only when he alleges facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Bowen v. First Family Fin. Servs., Inc. 233 F.3d 1331, 1340 (11th Cir.2000) (internal quotation marks and alteration omitted).

Cruz fails to establish that there is a substantial likelihood that he will be subject to continuing or future injury because of Defendant's conduct. Cruz's sole focus is on an alleged past wrong, namely Judge Mollica's decision regarding his bail.  His allegation of past unconstitutional conduct is insufficient to establish a case and controversy: "past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . if unaccompanied by any continuing, present adverse effects."  Bauer v. Texas, 341 F. 3d 352, 358 (5th Circ 2003), quoting City of Los Angeles v. Lyons, 461 U.S. 95 (1983). See also,  Shotz v.

Cates, 256 F.3d 1077, 1082 (11th Cir. 2001)("An injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").

Cruz must assert "a reasonable expectation that the injury [he has] suffered will continue to be repeated in the future." Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir. 1999)(internal citations omitted). He has not alleged any facts that he will be subject to criminal actions in the future, let alone that he will again face a decision regarding whether he should be released on bond and what conditions should be imposed. At best, such a concern is "conjectural, hypothetical or contingent", and not "real and immediate," as it must be. Id. (quoting Emory v. Peeler, 756 F.2d 1547, 1551–52 (11th Cir.1985)); see also, City of Los Angeles v. Lyons, 461 U.S. 95, 107–108 (1983) (noting that the plaintiff lacked standing to seek an injunction because it was speculative that he would be arrested again and that he would be subjected to a chokehold again). Cruz's complaint is premised on an alleged past wrong, and its retrospective posture renders declaratory relief and injunctive relief improper. See, e.g., De Luna v. Hidalgo County, Tex., 853 F. Supp. 2d 623, 637–38 (S.D. Tex. 2012)(concluding that defendants who challenged judges' decision to jail defendants who could not pay court imposed fines as unconstitutional lacked standing because they did not face "real and immediate" threat of future injury).

### 3. Mootness

Not only does Cruz lack standing because he retrospectively challenges a past wrong, his claims are also moot because he was convicted of the offense and he is no longer in custody.

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000). The Supreme Court

applied this principle to a case where a plaintiff challenged his pretrial bail, and it found that his claim was rendered moot once he was convicted:

> It would seem clear that under [the] general rule [of mootness] Hunt's claim to pretrial bail was moot once he was convicted. The question was no longer live because even a favorable decision on it would not have entitled Hunt to bail. For the same reason, Hunt no longer had a legally cognizable interest in the result in this case.

Murphy v. Hunt, 455 U.S. 478, 481–82 (1982).  The court's analysis applies with equal force to Cruz's case.  Once he entered a plea and his sentence was imposed, and he was no longer being held on the bail he complains of, his claims directed to pretrial bail became moot.  See also, Kemp v. Futch, C/A 1:09-2416-TLW, 2010 WL 3782386, at *2 (D.S.C. Aug. 12, 2010), report and recommendation adopted, C.A. 1:09-2416-TLW, 2010 WL 3782280 (D.S.C. Sept. 22, 2010)(dismissing a plaintiff's claim of excessive bail because he brought suit after he was convicted of the offense and began serving his sentence).

### 4.  Eleventh Amendment immunity

The Eleventh Amendment[4] precludes certain suits by citizens against their own States in federal court. Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, (2001). This prohibition applies in equal force regardless of whether the plaintiff seeks monetary, injunctive or declaratory relief.  Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989). Generally, Eleventh Amendment immunity applies unless Congress validly abrogates that immunity or the state consents to be sued.[5]  Miller v. King, 384 F.3d 1248, 1268 (11th Cir.2004).

---

[4] The Eleventh Amendment provides that: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[5] Neither exception applies here.  It is well established that Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. Cross v. State of Ala., 49 F.3d 1490, 1502 (11th Cir.1995). In addition, Florida has not waived its sovereign immunity or consented to be sued in suits brought pursuant to § 1983. Gamble v. Florida Dep't of Health & Rehab. Serv., 779 F.2d 1509, 1513 (11th Cir.1986).

In this case, as argued above, Cruz improperly sues Judge Mollica individually, and by doing so, his claims for declaratory and injunctive relief are not cognizable. Assuming arguendo that he amended his complaint to sue Judge Mollica in her official capacity, his suit would be barred by the Eleventh Amendment.

State officials sued in their official capacity are persons under § 1983. Hafer v. Melo, 502 U.S. 21 (1991). Though nominally a suit against a named individual, the suit is functionally a suit against the State. Id. As such, "lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." Lewis v. Clarke, 137 S. Ct. 1285, 1290–91 (2017) (quoting Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

Lawsuits against State officials sued in their official capacity are generally barred under the Eleventh Amendment, with one notable exception. In Ex Parte Young, the Supreme Court held that a private litigant can sue a state officer for prospective injunctive relief to end "a continuing violation of federal law." 209 U.S. 123 (1908). A state official who enforces "'an unconstitutional legislative enactment . . . comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254 (2011) (quoting Ex Parte Young, 209 U.S. at

159-60).  Because Cruz, a citizen of Florida, has sued Judge Mollica[6], a state officer, "to obtain declaratory [and injunctive] relief . . . this lawsuit must be dismissed unless it falls within Ex Parte Young's exception to the Eleventh Amendment."  Summit Med. Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

To determine when Ex Parte Young applies, courts perform a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002).  Where there is no such ongoing violation of federal law, "a declaratory judgment [and injunctive relief] will not be an available remedy as against the state due to sovereign immunity."  Taylor-Tillotson v. Florida Dept. of Children & Families Circuit 15, Palm Beach Unit, 12-81364-CIV, 2013 WL 6050968, at *4 (S.D. Fla. Nov. 14, 2013).  The reason for this is that "[d]eclaratory relief is not prospective as required by the Ex Parte Young doctrine when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective."  Id.

Here, Cruz's claims fall outside of Ex parte Young because the relief he requests is retrospective in nature.   As argued above, Cruz's factual allegations focus on his past misdemeanor prosecution that culminated in a no contest plea on March 29, 2018.  Cruz does not make a single allegation of an ongoing violation of federal law, as he must.  Verizon Md., Inc. 535 at 645.  Though he is less than clear in the remedy he seeks in this case, it can be fairly

---

[6] It is well-established that judges and courts generally are entitled to Eleventh Amendment immunity.  See McBrearty v. Koji, 348 F. App'x 437, 440 (11th Cir.2009) (applying Eleventh Amendment immunity to a Florida District Court of Appeal); Zabriskie v. Court Admin., 172 F. App'x 906, 908–09 (11th Cir.2006) (affirming dismissal of plaintiff's claims for monetary damages against Florida circuit court administrators and employees, finding that defendants were part of the state court system and therefore an arm of the state entitled to Eleventh Amendment immunity); Badillo v. Thorpe, 158 F. App'x 208, 212–13 (11th Cir.2005) (same, with respect to circuit court judge and administrator); Kaimowitz v. The Fla. Bar, 996 F.2d 1151, 1155 (11th Cir.1993) (finding that Eleventh Amendment bars suits against state courts and state bars).

inferred under the facts and circumstances that it " . . . does nothing to ensure compliance in the future with a substantive federal-question determination", but rather looks to the past for, essentially, compensatory relief. Milliken v. Bradley, 433 U.S. at 289 (quoting Edelman, 415 U.S. at 664).

One district court faced with a plaintiff similarly attacking his State criminal conviction found that his Section 1983 suit did not satisfy Ex Parte Young:

> This exception to Eleventh Amendment immunity does not assist the plaintiff as all of his claims for injunctive relief seek to remedy alleged wrongs in his state court prosecution, conviction, and sentencing. These are completed "past wrongs" for purposes of applying the *Ex parte Young* doctrine. The Eleventh Amendment therefore bars all of the plaintiff's claims against the state actor defendants in their official capacities

Brown v. Turner, 117CV00449KOBTMP, 2017 WL 3836077, at *4 (N.D. Ala. July 21, 2017), report and recommendation adopted, 117CV00449KOBTMP, 2017 WL 3781621 (N.D. Ala. Aug. 31, 2017).

Cruz's claims in the present case are no different from the ones dismissed in Brown: he seeks to remedy alleged "completed past wrongs" in his state court proceedings. Id. Accordingly, he cannot avail himself of the Ex Parte Young exception and his claims are barred by the Eleventh Amendment as a result.

### 5. Cruz's claims are barred by the **Rooker-Feldman** doctrine

Cruz's case involves what the Supreme Court has described as the "paradigmatic situation" for the Rooker-Feldman doctrine: an attempt to undo a state court judgment in his favor. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). For that reason, his direct challenge to a state court decision and judgment presents "an easy case for the application of the Rooker-Feldman doctrine." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331–33 (11th Cir. 2001)(describing a direct attack on a state court judgment where the primary relief was an

injunction preventing enforcement of a state court judgment and returning custody to an aggrieved parent).  As a result, pursuant to Rooker-Feldman, the Court is without jurisdiction to consider his lawsuit.

The Rooker-Feldman doctrine derives from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  It is jurisdictional and prevents district courts from reviewing state court judgments, which is the exclusive province of the Supreme Court.  Nicholson v. Shafe, 558 F.3d 1266, 1270 (11th Cir.2009).  In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005), the Supreme Court stated that "[t]he Rooker-Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   More specifically, " . . . the Rooker-Feldman doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed "'only to the extent that the state court wrongly decided the issues.'" Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1262–64 (11th Cir. 2012)(citing Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir.2009)).

In this suit, Cruz directly and unequivocally challenges his criminal conviction.  He argues that his plea agreement was "unconscionable" and not "freely and knowingly given."   (D.E. 1, ¶ 58).  As a result, he asks that his plea agreement be considered "null and void" and requests that the Court "set aside" certain portions of the agreement.  Id.   Similarly, Cruz appears to imply that but for Judge Mollica's bond decision, which he directly challenges, he would not have

entered a plea and never would have been convicted of the offense. Id. at ¶ 37. Taken together, it is clear that Cruz is requesting that this Court undo his state court judgment. These allegations satisfy the test described by the Alvarez court –Cruz explicitly asks the court to "nullify" the state court judgment, and he obviously can succeed only if Judge Mollica wrongly decided the issues.

In fact, this case is similar to Alvarez. The plaintiff in Alvarez argued that the State prevented him from gaining access to physical evidence for purposes of DNA testing, violating many of his constitutional rights, including his Sixth Amendment right to confrontation, his Fourteenth Amendment right of access to the courts and his procedural due process rights under the Fourteenth Amendment. The court characterized his claims as follows: "Florida courts erroneously applied and interpreted Florida's concededly constitutional procedures in deciding his case." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1262 (11th Cir. 2012). The Alvarez court goes on to conclude that his claim is barred by the Rooker-Feldman doctrine:

> Alvarez similarly seeks review and rejection of the state court judgment in this case. *See Exxon Mobil,* 544 U.S. at 291, 125 S.Ct. 1517. His as-applied procedural due process claim plainly and broadly attacks the state court's *application* of Florida's DNA access procedures to the facts of his case; notably, it does not challenge the constitutionality of those underlying procedures. Alvarez claims that in denying his petition for DNA testing, "the State court arbitrarily ignored material facts showing a 'reasonable probability' that Mr. Alvarez would have been acquitted," and that the state court made erroneous findings of fact concerning his petition.

Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1263 (11th Cir. 2012).

The same conclusion should be reached in this case. Cruz likewise seeks review and rejection of the State court judgment in his case, and his complaint is premised on Judge Mollica's application of Florida law to the facts of his case as she decided the appropriate bond and conditions of pretrial release. Like Alvarez, Cruz does not challenge the constitutionality of Florida law and, as with Alvarez, it is "abundantly clear that success on his claim would

effectively nullify the state court's judgment and that the claim would succeed "only to the extent that the state court wrongly decided the issues." Id. For these reasons, this Court should apply the Rooker-Feldman doctrine to Cruz's complaint and dismiss it for lack of subject matter jurisdiction.

### B.  Judicial Immunity

Cruz's claim for injunctive and declaratory relief is barred by judicial immunity.  It is well established that judges are entitled to absolute judicial immunity for damages for acts taken in their judicial capacity unless they acted in the "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).  The immunity is truly absolute in nature and applied when the judge's acts are in "clear error, malicious or exceeded his or her jurisdiction." Stump, 435 U.S. at 356.  A plaintiff may overcome judicial immunity in only two circumstances: (1) a judge is not immune from liability for nonjudicial actions, i.e. actions not taken in the judge's judicial capacity," and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991) (internal cites omitted).

In 1996, Congress amended 42 U.S.C. § 1983 to extend judicial immunity to bar injunctive relief in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  In doing so, Congress overruled the holding in Pulliam v. Allen, 466 U.S. 522, 541-42 (1984) that judicial immunity does not protect state judges from claims for injunctive relief and attorney fees under Section 1983. Sitomer v. King, 549 U.S. 1210 (2007) ("42 U.S.C. § 1983, as amended in 1996 by the Federal Courts Improvement Act, explicitly immunizes judicial officers against suits for injunctive relief.");

Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (recognizing that Pulliam was partially abrogated by amendment to Section 1983).

Here, there is no question that Judge Mollica's decision regarding Cruz's bond is a judicial act, as the 11th Circuit has noted: "issuing an order is one of the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court." Bush v. Washington Mut. Bank, 2006 WL 929385 at *1-*2 (11th Cir. Apr. 11, 2006) (quoting Forrester v. White, 484 U.S. 219, 227 (1988)).  Decisions regarding bail are acts taken in judges' judicial capacity as they are "inherently judicial." Root v. Liston, 444 F.3d 127, 132 (2d Cir. 2006); Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997) ("arraignment of plaintiff and setting of bail were plainly judicial acts").

In addition, Cruz does not allege a declaratory decree was violated or declaratory relief was unavailable, removing any obstacle to the protection of judicial immunity against injunctive relief. See, Mancero-Ramirez v. City of Hoover, Alabama, 2006 WL 8436599, at *3 (N.D. Ala. May 15, 2006)(applying judicial immunity to dismiss a complaint when Plaintiff failed to allege that declaratory relief was unavailable or declaratory decree was violated;  See also, Wells v. Miller, 15-CV-80412, 2015 WL 12953101, at *2 (S.D. Fla. Apr. 8, 2015), report and recommendation adopted, 15-80412-CIV, 2015 WL 12953098 (S.D. Fla. June 8, 2015)(same). Accordingly, judicial immunity bars Cruz's claims for injunctive relief.

Declaratory relief is likewise not available to Cruz in this action under § 1983.  The 1996 amendment to § 1983 "did not expressly authorize suits for declaratory relief against judges." Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 197-198 (3d Cir. 2000).  Rather "it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or

inadequate". Id. at 198.  The purpose of the amendment was simply to overrule Pulliam in pertinent part, and "not to alter the landscape of declaratory relief". Id. (citing the Senate report accompanying the amendment).

Thus, "determining whether the declaratory relief is available in the instant case turns on whether the judges in this case properly may be named as defendants to this § 1983 action." Id. This determination, in turn, depends on the capacity in which the judges are acting.  When they act in their judicial or adjudicative capacities, rather than in an administrative or enforcement role, they are not subject to a declaratory action under § 1983.  Id. at 200; see also, In re Justices of The Supreme Court of Puerto Rico, 695 F.2d 17, 22 (1st Cir.1982) ("[i]n short, § 1983 does not provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message"). Because this lawsuit involves the "inherently judicial" acts of determining bond and pretrial release, Judge Mollica is immune from any claim for declaratory relief.  See Root, 444 F.3d at 132. (prosecutor's conduct in increasing bond amount of criminal defendant was judicial in nature).

Additionally, other courts have concluded that judicial immunity bars a claim for retrospective declaratory relief. As argued in section A, supra, the relief sought by Cruz focuses on past acts, including his judgment and sentence and Judge Mollica's imposition of his bond.  It is thus retrospective in nature, and "therefore barred by judicial immunity."  Snow v. King, 4:17-CV-1048-VEH, 2018 WL 656032, at *6 (N.D. Ala. Feb. 1, 2018), appeal dismissed, 18-10816-J, 2018 WL 2717366 (11th Cir. May 1, 2018), citing Andrews v. Hens-Greco, 641 Fed.Appx. 176, 180 (3d Cir. 2016) and Moore v. City of New York, No. 12-CV-4206 RRM LB, 2012 WL 3704679, at *2 (E.D.N.Y. Aug. 27, 2012).  In addition to giving rise to standing issues and the

Eleventh Amendment bar, Cruz's backward-looking declaratory relief implicates judicial immunity as well and must be dismissed.

### C. <u>Failure to State a Cause of Action</u>

**1.  Failure to state a cause of action for excessive bond**

Cruz's claims amount to a disagreement with Judge Mollica's application of Florida law – the constitutionality of which he does not question – to the circumstances of his case. It is clear from the face of his complaint that the premise of Judge Mollica's decision regarding his bond and the attendant conditions was the safety of the community, a valid and necessary consideration upon which judges may exercise their discretion in making pre-trial release decisions. (D.E. 1, ¶ 54).

What is missing from Mr. Cruz's complaint is any allegation that Judge Mollica enhanced his bond for an "improper purpose" or that it was "excessive in light of the purpose for which it was set."). <u>Galen v. County of Los Angles,</u> 477 F.3d. 652, 660 (9th Cir. 2007)(holding that a bond of one million dollars, enhanced from the fifty thousand dollars listed in county's bond schedule, was not excessive because plaintiff failed to show that his bail was enhanced "for an improper purpose or that it was excessive in light of the purpose for which it was set.").

First, notably lacking are specific allegations "as to why his bail bond was excessive." <u>Marsh v. Randolph</u>, 1:09-CV-13, 2012 WL 397778, at *5 (E.D. Tenn. Feb. 7, 2012).  In finding that a complaint lacked specific allegations as to why a bond was excessive, the court in <u>Marsh</u> noted the following: "[f]or example, Marsh does not provide his criminal history, the complete facts of the charges against him, his connection to the community, or his flight risk." <u>Id.</u>  Cruz's complaint likewise fails to include these crucial facts that demonstrate his bond was excessive under the constitution.

The facts that are alleged are insufficient to state a valid cause of action.  For example, Cruz alleges that the bail set was beyond his ability to pay. (D.E. 1, ¶ 52).   However, just because the bail amount is beyond a person's means does not mean that it is excessive.  <u>Galen,</u> 477 F.3d. at 661.  This is especially true where there is no improper motive at work, which is the case here. <u>Id</u>. at 660.  As another example, Cruz, referring to the bond schedule, alleges that his bond was in "excess of the standard bail for this offense." (D.E. 1, ¶ 51).   A bond schedule is not mandatory, and a judge has discretion to enter a higher bond than what is listed on the bond schedule.  <u>See e.g.</u>, <u>Primm v. State</u>, 295 So. 2d 669, 670 (Fla. 2d DCA 1974)(denying a habeas corpus petition that challenged the trial court's decision to set bond in an amount higher than the bond schedule).   For these reasons, Cruz fails to state a cause of action for excessive bond, and the claim should be dismissed.

### 2. Claims related to Plaintiff's plea and sentence have nothing to do with Judge Mollica

Plaintiff mistakenly includes Judge Mollica in two counts directed at his plea and sentence. Plaintiff does not even mention Judge Mollica in these two counts, and, as a factual matter, Judge Mollica was not involved in Cruz's case beyond his initial bond hearing. <u>See</u> Exhibit B and Exhibit C.   Furthermore, Cruz must demonstrate that Judge Mollica is the cause of the constitutional deprivation.   <u>See, e.g.</u>, <u>Campbell v. Johnson</u>, 586 F.3d 835, 843 (11th Cir. 2009)(dismissing a sheriff from a case involving an allegation of excessive bond because he had no role in establishing or imposing the defendant's bond).  Cruz makes no effort to establish that Judge Mollica played any role whatsoever in his agreed upon plea and ultimate sentence.

### 3. Cruz had an adequate remedy at law

To obtain declaratory and injunctive relief, a plaintiff must establish: (1) that there was a violation; (2) that there is a serious risk of continuing irreparable injury if the relief is not

granted; and (3) the absence of an adequate remedy at law. Id.; Newman v. Alabama, 683 F.2d 1312 (11th Cir. 1982) (same standard for declaratory and injunctive relief).   As argued above, Plaintiff's complaint focuses on an alleged past harm, so he fails to satisfy the second element, but he further had an adequate remedy at law.   Anytime a party sues a judge for an action pursuant to his or her judicial capacity, "there will 'invariably' be an adequate remedy at law through either ordinary appeals or an extraordinary writ" Bolin v. Story, 225 F.3d 1234, 1240 (11th Cir. 2000)(citing Mullis v. United States Bankr. Court for the Dist. of Nev., 828 F.2d 1385 (9th Cir.1987).[7]   This case is no exception to that rule.

Under the rules of criminal procedure, a defendant's path to challenge a bond determination is clear.   As previously noted, Florida Rule of Criminal Procedure 3.131(d) provides a criminal defendant who has been detained or has had a bond amount set with the right to challenge the detention order, or to seek a reduction in the bond amount.   A defendant may obtain this review either from the trial court in his or her case, or the circuit court if a trial judge is unavailable. Id. In addition to bond review by the trial court, criminal defendants in Florida have the right to seek habeas corpus relief in Florida appellate courts.   See, Norton Nugin v. State, 179 So. 3d 557, 559 (Fla. 2d DCA 2015) ("[a] petition for writ of habeas corpus is the proper method to seek review of an order setting pretrial release conditions."); Alvarez v. Crowder, 645 So. 2d 63, 64 (Fla. 4th DCA 1994) ("[a]lthough a trial court's ruling on bail is entitled to a presumption of correctness, an appellate court will grant [habeas] relief where the petitioner demonstrates that the amount of bail set is unreasonable under the circumstances").   Florida courts do not hesitate to consider federal constitutional questions in the context of criminal prosecutions.   See, e.g., Gore v. State, 964 So. 2d 1257 (Fla. 2007) (Florida Supreme Court affirmed the denial of a post-conviction

---

[7] The court further noted that the "availability of these alternate remedies would diminish a plaintiff's ability to show a serious risk of irreparable harm as well", which certainly holds true in this case.   Id.

relief petition, and denied a state habeas corpus petition in a death-penalty case in which defendant alleged multiple violations of his rights under the U.S. Constitution). These legal avenues for redress provided Cruz with adequate remedies at law, and his claims for equitable relief must therefore be dismissed.  See McDaniel v. Peterson, 1:14CV1176-MHT, 2015 WL 417559, at *1 (M.D. Ala. Feb. 2, 2015)(dismissing a challenge to a bond determination because plaintiff had adequate remedies at law).

### D.  Conclusion

The standing requirement, mootness, the Eleventh Amendment, judicial immunity and the Rooker-Feldman doctrine prevent this Court from retroactively undermining Cruz's criminal conviction and Judge Mollica's decisions regarding his bail.  What Cruz presents to this Court is a disagreement with Judge Mollica's application of Florida law to his case, an issue that should have been presented to the Circuit Court and then the Third District Court of Appeal on appeal through a habeas petition, not this Court.   For these reasons, Judge Mollica respectfully requests that Cruz's complaint be dismissed with prejudice.

Respectfully Submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

/s/ John J. Bajger
John J. Bajger (Fla. Bar No. 027459)
John.Bajger@myfloridalegal.com
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
110 Southeast Sixth Street
10th Floor
Ft. Lauderdale, Florida 33301
Telephone: (954) 712-4600
Facsimile: (954) 527-3702
Attorney for Judge Mollica

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ John J. Bajger
John J. Bajger
Assistant Attorney General

## SERVICE LIST

Zachary Paul Cruz v. Judge Kim Theresa Mollica
Case No.: 0:18-ca-60995-KMM
United States District Court, Southern District of Florida – Fort Lauderdale

Dallas S. LaPierre, Esq.
Nexus Derechos Humanos Attorneys, Inc.
44 Broad St., NW, Ste. 200
Atlanta, GA 30303
dlepierre@ndhlawyers.com
mdobbs@ndhlawyers.com
(404) 254-0442 Telephone
(404) 592-6225 Facsimile
Attorney for Plaintiff
[Via CM/ECF]

Beth Jeanne Leahy, Esq.
Walton Lantaff Schroeder & Carson
110 E. Broward Boulevard
Suite 2000
Ft. Lauderdale, FL 33301
bleahy@waltonlantaff.com
(954) 463-8456
Attorney for Captain Sherea Green
[Via CM/ECF]