UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-60995-KMM

ZACHARY PAUL CRUZ,

    Plaintiff,

v.

CAPTAIN SHEREA GREEN *et al.*,

    Defendants.
_____/

## ORDER ON DEFENDANT KIM THERESA MOLLICA'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Judge Kim Theresa Mollica's ("Judge Mollica") Motion to Dismiss ("Motion") (ECF No. 16) four counts of Plaintiff Zachary Paul Cruz's ("Plaintiff") Complaint ("Compl.") (ECF No. 1).[1] Plaintiff filed a response ("Response") (ECF No. 22) and Judge Mollica replied ("Reply") (ECF No. 23). The matter is now ripe for review.

## I. BACKGROUND[2]

Plaintiff is an 18–year–old former student at Marjory Stoneman Douglas High School ("Stoneman Douglas") in Parkland, Florida and brother of Nicholas Cruz. Compl. ¶¶ 10–11. On February 14, 2018, Nicholas Cruz allegedly murdered 17 Stoneman Douglas students and injured many others. *Id*. On March 19, 2018, after students had been dismissed for the day, Plaintiff skateboarded onto the grounds of Stoneman Douglas. *Id*. ¶¶ 12–13. While on school grounds,

---

[1] Plaintiff brings the instant action against multiple Defendants, including Judge Mollica. This Order addresses only the arguments raised in Judge Mollica's Motion to Dismiss.

[2] The following facts are taken from the Complaint and accepted as true for the purpose of ruling on this Motion. *Fernandez v. Tricam Indus., Inc.*, No. 09-cv-22089, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009).

Plaintiff did not make threats, approach anyone, or otherwise behave in an odd manner. *Id.* ¶ 12. Nor did he use any kind of force to enter school premises. *Id.* ¶ 13.

An unnamed Deputy from the Broward County Sheriff's Office ("BCSO") approached and stopped Plaintiff while he was skateboarding. *Id.* ¶ 15. Once stopped, Plaintiff was cooperative, did not flee nor resist, and freely answered the Deputy's questions.[3] *Id.* Plaintiff provided the Deputy with Plaintiff's name, telephone number, and information regarding his employment and living situation. *Id.* ¶ 16. When asked why Plaintiff was on school grounds, Plaintiff replied that he was "trying to soak it all in." *Id.* Upon learning Plaintiff's identity, Plaintiff was arrested for trespassing and booked into custody at the Broward County Main Jail (the "Main Jail"). *Id.* ¶ 17.

Plaintiff's bond on his misdemeanor trespass charge was initially set at $25, which was paid at 9:54 p.m., while Plaintiff was booked at the Main Jail. *Id.* ¶ 19. After paying his bond, Plaintiff attempted to depart, but Main Jail staff refused to release him. *Id.* ¶ 21. At 11:00 p.m., a medical report written by Gale Kite, an advanced registered nurse practitioner, stated that Cruz had no telephone, car, or responsible transportation, and that he was "at risk of being released to the streets, and has the entire community at unease." *Id.* ¶ 19.

The following day, Plaintiff appeared before Judge Mollica for a bond hearing. *Id.* ¶ 22. At the hearing, the State of Florida requested that bond be set at $750,000, arguing that Plaintiff should, among other things: not be permitted to return to Broward County; have his home searched prior to Plaintiff's release; be barred from all school property; and be on house arrest and subject to GPS tracking. *Id.* The State claimed that these remedies were necessary because "of the fear that [Plaintiff's] presence invokes because of his family relationship," and asked

---

[3] Plaintiff alleges to have video footage of the arrest, which shows him behaving calmly and not erratically or bizarrely. *Id.* ¶ 24.

2

Judge Mollica to "use every means available to ensure that 'students can attend school without fear.'" *Id.*

Judge Mollica set bond at $500,000, noting that Plaintiff is the brother of Nicholas Cruz and that Stoneman Douglas students deserved to feel safe, especially following a grave tragedy. *Id.* ¶ 23. Judge Mollica then granted the State's request to search Plaintiff's home, bar Plaintiff from entering Broward County or coming within one mile of Stoneman Douglas, and to have no contact with his brother or any Stoneman Douglas student. *Id.*

Unable to make bail, Plaintiff remained in custody until being involuntarily committed, under the Baker Act, Fla. Stat. 394.467 (2016), to the Broward Health Medical Center (the "Health Center"), where Plaintiff spent five days undergoing repeated mental health evaluations and was placed on 24–hour watch. *Id.* ¶¶ 24–25. Doctors at the Medical Center found Plaintiff to be pleasant, cooperative, and alert, and found no signs of depression or suicidal or homicidal behavior. *Id.* ¶ 25.

After being released from the Medical Center and returned to the Main Jail, Plaintiff's treatment "became immediately harsher." *Id.* ¶ 27. Plaintiff was placed in the infirmary on 24–hour lockdown, allowed to leave his cell only for visits with his attorney or daily nurse. *Id.* Plaintiff was also placed in a suicide vest, a heavy restraint that limited his movement, for 24 hours a day, which was only removed following Plaintiff's execution of a plea deal with the State. *Id.* ¶ 28. Plaintiff also suffered sleep deprivation caused by lighting not being dimmed at night and harassment by the jail nurse and attending guard regarding Plaintiff's mental health. *Id.* ¶¶ 28, 30

After spending ten days in custody, five of which were in a cell under constant lighting and in a heavy suicide vest, Plaintiff agreed to a plea deal with the State, which required him to (i) undergo another mental health evaluation; (ii) serve 6 months' probation; (iii) not come

3

within one mile of Stoneman Douglas; (iv) not possess firearms or weapons; (v) not possess alcohol or drugs; (vi) not set foot on any school campus on which he is not enrolled; (vii) not visit or have any contact with any Stoneman Douglas student; and (viii) not to have any contact with his brother. *Id.* ¶ 32.

Plaintiff claims that the plea agreement is unconscionable because it was allegedly obtained through coercion and abusive treatment from Main Jail staff. *Id.* ¶ 36. Plaintiff states that he would have challenged his arrest at trial, or at least negotiated for a better plea, had he not been subject to such treatment. *Id.*

On May 3, 2018, Plaintiff filed the Complaint under 42 U.S.C. § 1983 against multiple Defendants, including Judge Mollica. *See generally* Compl. In Count IV, Plaintiff seeks declaratory and injunctive relief against Judge Mollica for the (i) allegedly excessive bail amount imposed on Plaintiff and (ii) various bail conditions imposed on Plaintiff that allegedly were not rationally related to any legitimate public safety concern. *Id.* ¶¶ 53–54.[4] In Count V, Plaintiff seeks his plea agreement with the State to be declared "null and void" because it was obtained through unconscionable means. *Id.* ¶ 58. In Count VI, Plaintiff seeks to void the terms of his probation because they, too, are allegedly unconscionable. *Id.* ¶ 61. Finally, in Count IX, Plaintiff seeks attorney's fees against all Defendants in this cause, including Judge Mollica. *Id.* at 23.

Judge Mollica moves to dismiss the above counts on various grounds, including lack of Article III standing, mootness, Eleventh Amendment Immunity, judicial immunity, the *Rooker-*

---

[4] Although Count IV of the Complaint states that Judge Mollica is being sued in an individual capacity, Plaintiff "readily concedes that it was clearly a clerical error to title claims against [Judge Mollica] . . . in her individual capacity." Response at 2 n. 1. Accordingly, the Court will interpret Count IV as being asserted against Judge Mollica in Judge Mollica's official capacity.

*Feldman* doctrine, and Fed R. Civ. P. 12(b)(6).[5]  Motion at 2.  Plaintiff argues that none of the above–listed hurdles deprive Plaintiff's claims for declaratory and injunctive relief from proceeding.  Response at 2–19.

## II.     STANDARDS OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).  "[T]he pleadings are construed broadly," and the allegations in the complaint are viewed in the light most favorable to the plaintiff.  *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006); *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016).

The *Rooker–Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012).  This doctrine "is confirmed to cases . . . brought by state–court losers complaining of injuries cause by state–court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id* (internal citation omitted).  The *Rooker–Feldman* doctrine deprives federal courts of jurisdiction where the issue before the federal court is "inextricably intertwined" with the state court

---

[5] For the purposes of this Motion, and for the reasons that follow, the Court need only address Judge Mollica's arguments relating to the *Rooker–Feldman* doctrine and Fed. R. Civ. P. 12(b)(6).

judgment so that "(1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues." *Id*. at 1263 (internal citation omitted).  A plaintiff "may not seek reversal of a state court judgment simply by recasting his complaint in the form of a civil rights action." *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984).  "[A] federal district court may not review a state court judgment even upon a claim that that judgment violates the United States Constitution.  The remedy for such a violation is an appeal to the state appellate courts, whose decision may be reviewed by the United States Supreme Court." *Claughton v. Donner*, 771 F. Supp. 1200, 1204 (S.D. Fla. 1991).

### III. DISCUSSION

Judge Mollica argues that Plaintiff's claims for injunctive and declaratory relief are barred by the *Rooker–Feldman* doctrine because Plaintiff requests a federal district court to nullify a state court judgment.  Motion at 12–15.  Judge Mollica further contends that Plaintiff's claims relating to his plea agreement and probation conditions fail to state a claim because Judge Mollica did not sentence Plaintiff nor had any part in drafting or negotiating the plea agreement. *Id.* at 19–21.  In response, Plaintiff argues that as a result of the allegedly excessive bail imposed by Judge Mollica, Plaintiff was subjected to various Eighth Amendment violations caused by the other Defendants in this action.  Response at 9.  Plaintiff also claims that the terms of the plea agreement and probation, which stem from Judge Mollica's allegedly excessive bail determination, are unconscionable and should thus be declared void.  Compl. ¶¶ 58, 61.

In Count IV, Plaintiff claims that Judge Mollica's judgment under Florida state law to set Plaintiff's bail amount at $500,000 and impose various bail conditions on Plaintiff violated Plaintiff's Eighth Amendment right against excessive bail.  Compl. ¶¶ 53–54; Response at 9; U.S. Const. amend. VIII.  Plaintiff further argues that no state court has made a ruling on his

6

Eighth Amendment claim, so the federalism principles at the heart of the *Rooker–Feldman* doctrine are not implicated by the instant action. Response at 9. Federal district courts, however, lack jurisdiction to review a state court's judgment, "even upon a claim that that judgment violated the United States Constitution." *Donner*, 771 F. Supp. at 1204; *Staley v. Ledbetter*, 837 F.2d 1016, 1017–1018 (11th Cir. 1988) ("Federal courts are not a forum for appealing state court decisions.").[6] The *Rooker–Feldman* doctrine therefore bars this Court from entertaining Plaintiff's constitutional challenge, "recast as a civil rights action," of a state court judgment. *See Hagerty*, 749 F.2d at 220. The Court thus grants Judge Mollica's motion to dismiss Count IV of the Complaint for lack of jurisdiction.

Next, Plaintiff all but concedes that Counts V and VI, which seek a declaration from the Court that Plaintiff's plea agreement and terms of probation are "null and void," have almost nothing to do with Judge Mollica, who took no part in sentencing Plaintiff or crafting the terms of the plea agreement. Response at 18 ("[Judge] Mollica's only connection to the plea agreement is that it constitutes a continuing harm suffered by the Plaintiff as a result of the excessive bond. As such, Plaintiff makes no claim against Judge Mollica for declaratory relief as to the plea . . ."). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that

---

[6] Plaintiff argues that he waived his right to appeal Judge Mollica's bond determinations when he entered into his plea agreement with the State, and as such has no recourse to seek relief from a higher state court. Response at 18. However, Plaintiff could have moved for Judge Mollica to reconsider the judgment pursuant to Fl. R. Crim. Pro. § 3.131(d), appealed the judgment to a higher appellate court during the ten days that passed in between Judge Mollica's bond judgments and his execution of the plea agreement, or filed a habeas petition to review the judgment. Moreover, even if the above–mentioned remedies are not presently available to Plaintiff, "the fact that they were previously available would preclude a finding that the plaintiff lacks an adequate remedy at law. . ." *Drees v. Ferguson*, 2:09-CV-401-JEO, 2009 WL 10694962, at *9 (N.D. Ala. May 6, 2009), *report and recommendation adopted*, 2:09-CV-00401-LSC, 2009 WL 10694961 (N.D. Ala. Sept. 9, 2009), *aff'd*, 396 F. App'x 656 (11th Cir. 2010).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Plaintiff has not pled with sufficient plausibility any connection between Judge Mollica's bail determination and either the allegedly unconscionable terms of the plea agreement or the terms of Plaintiff's probation that would result in any kind of liability for Judge Mollica. Plaintiff's claims against Judge Mollica under Counts V and VI, in other words, do not "allow the court to draw the reasonable inference that" Judge Mollica is liable for the allegedly unconscionable terms of the plea agreement and probation at issue.[7] *See id.* The Court therefore grants Judge Mollica's motion to dismiss Counts V and VI of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[8]

## IV. CONCLUSION

Accordingly, UPON CONSDIERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, Judge Mollica's Motion to Dismiss (ECF No. 16) Counts IV, V, VI, and IX of the Complaint is hereby GRANTED. The Clerk of Court is instructed to REMOVE Judge Kim Theresa Mollica as a Defendant in this matter.

DONE AND ORDERED in Chambers at Miami, Florida, this  17th  day of December, 2018.

_____
K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

---

[7] To the extent that Plaintiff seeks to declare "null and void" the state court's incorporation of the terms of the plea agreement and probation within its judgment of conviction, that remedy is plainly barred by *Rooker–Feldman*. *Alvarez*, 679 F.3d at 1263 (depriving the district court of jurisdiction where "the success of the federal claim would 'effectively nullify' the state court judgment.").

[8] Because the Court has dismissed Counts IV, V, and VI against Judge Mollica, the sole remaining count against Judge Mollica –Count IX for attorney's fees– is also dismissed.