UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-60995-KMM

ZACHARY PAUL CRUZ,

    Plaintiff,

v.

CAPTAIN SHEREA GREEN *et al.*,

    Defendants.
_____/

## ORDER ON DEFENDANT CAPTAIN SHEREA GREEN'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Captain Sherea Green's ("Captain Green") Motion to Dismiss ("Motion") (ECF No. 18) five counts of Plaintiff Zachary Paul Cruz's ("Plaintiff") Complaint ("Compl.") (ECF No. 1).[1] Plaintiff filed a response ("Response") (ECF No. 24) and Captain Green replied ("Reply") (ECF No. 27). The matter is now ripe for review.

**I.    BACKGROUND**[2]

Plaintiff is an 18–year–old former student at Marjory Stoneman Douglas High School ("Stoneman Douglas") in Parkland, Florida and the brother of Nicholas Cruz. Compl. ¶¶ 10–11. On February 14, 2018, Nicholas Cruz allegedly murdered 17 Stoneman Douglas students and injured many others. *Id*. On March 19, 2018, after students had been dismissed for the day, Plaintiff skateboarded onto the grounds of Stoneman Douglas. *Id.* ¶¶ 12–13. While on school grounds, Plaintiff did not make threats, approach anyone, or otherwise behave in an odd manner. *Id.* ¶ 12. Nor did he use any kind of force to enter school premises. *Id.* ¶ 13.

---

[1] Plaintiff brings the instant action against multiple Defendants, including Captain Green. This Order addresses only the arguments raised in Captain Green's Motion to Dismiss.

[2] The pertinent facts are taken from the Complaint and accepted as true for the purpose of ruling on this Motion. *Fernandez v. Tricam Indus., Inc.*, No. 09-cv-22089, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009).

An unnamed Deputy from the Broward County Sheriff's Office ("BCSO") approached and stopped Plaintiff while he was skateboarding. *Id.* ¶ 15. Once stopped, Plaintiff was cooperative, did not flee nor resist, and freely answered the Deputy's questions.[3] *Id.* Plaintiff provided the Deputy with his name, telephone number, and information regarding his employment and living situation. *Id.* ¶ 16. When asked why Plaintiff was on school grounds, Plaintiff replied that he was "trying to soak it all in." *Id.* Upon learning Plaintiff's identity, Plaintiff was arrested for trespassing and booked into custody at the Broward County Main Jail (the "Main Jail"). *Id.* ¶ 17.

Plaintiff's bond on his misdemeanor trespass charge, initially set at $25, was paid at 9:54 p.m. while Plaintiff was booked at the Main Jail. *Id.* ¶ 19. After posting bond, Plaintiff attempted to depart, but Main Jail staff refused to release him. *Id.* ¶ 21. At 11:00 p.m., a medical report written by Gale Kite, an advanced registered nurse practitioner, stated that Cruz had no telephone, car, or responsible transportation, and that he was "at risk of being released to the streets, and has the entire community at unease." *Id.* ¶ 19.

The following day, Plaintiff appeared before a Florida state court judge ("Judge Mollica") for a bond hearing. *Id.* ¶ 22. At the hearing, the State of Florida requested that bond be set at $750,000, arguing that Plaintiff should, among other things: not be permitted to return to Broward County; have his home searched prior to Plaintiff's release; be barred from all school property; and be on house arrest and subject to GPS tracking. *Id.* The State claimed that these remedies were necessary because "of the fear that [Plaintiff's] presence invokes because of his family relationship," and asked Judge Mollica to "use every means available to ensure that 'students can attend school without fear.'" *Id.* Judge Mollica set bond at $500,000, noting that

---

[3] Plaintiff alleges to have video footage of the arrest, which shows him behaving calmly throughout the encounter. *Id.* ¶ 24.

Plaintiff is the brother of Nicholas Cruz and that Stoneman Douglas students deserved to feel safe, especially following a grave tragedy. *Id.* ¶ 23.

Unable to make bail, Plaintiff remained in custody until he was involuntarily committed, under the Baker Act, Fla. Stat. § 394.467 (2016), to the Broward Health Medical Center (the "Medical Center"), where Plaintiff spent five days undergoing repeated mental health evaluations and was placed on 24–hour suicide watch, with medical staff check–ups every 15 minutes. *Id.* ¶¶ 24–25. Doctors at the Medical Center found Plaintiff to be pleasant, cooperative, and alert, and found no signs of depression or suicidal or homicidal behavior. *Id.* ¶ 25. Nonetheless, the Medical Center "did recommend [to Captain Green and jail staff] that [Plaintiff] continue [to be] on suicide prevention" watch. *Id.* ¶ 47.

After being released from the Medical Center and returned to the Main Jail, Plaintiff's treatment "became immediately harsher." *Id.* ¶ 27. Plaintiff was placed in the infirmary on 24–hour lockdown, allowed to leave his cell only for visits with his attorney or daily nurse. *Id.* Plaintiff was also placed in a suicide vest, a heavy restraint that limited his movement, for 24 hours a day, which was only removed once Plaintiff executed a plea deal with the State. *Id.* ¶ 28. Plaintiff suffered sleep deprivation caused by lighting not being dimmed at night and harassment by the jail nurse and attending guard regarding Plaintiff's mental health. *Id.* ¶¶ 28, 30

On May 3, 2018, Plaintiff filed the Complaint under 42 U.S.C. § 1983 against multiple Defendants, including Captain Green, alleging violations stemming from Plaintiff's detention at the Main Jail. *See generally* Compl. In Counts I and II, Plaintiff alleges that Captain Green violated Plaintiff's Fourth Amendment right against unlawful seizures ("Count I") and Fourteenth Amendment right to due process ("Count II") by failing to release him from custody after Plaintiff posted his initial bond. *Id.* ¶¶ 38–44. In Count III, Plaintiff alleges that, after his bond hearing, Captain Green (i) ordered jail staff to place Plaintiff under 24–hour watch, in a

heavy suicide restraint vest and in a room with constant full lighting, which led to Plaintiff's sleep deprivation and (ii) approved without adequate cause Plaintiff's involuntary hospitalization under the Baker Act. *Id.* ¶¶ 45–49. In Count VII,[4] Plaintiff asserts a Florida state law claim of false imprisonment against Captain Green for detaining Plaintiff after his posting of bond. *Id.* ¶ 63. Finally, in Count IX, Plaintiff seeks attorney's fees against all Defendants, including Captain Green. *Id.* at 23.

Captain Green moves to dismiss Counts I, II, and III pursuant to Fed R. Civ. P. 12(b)(6), arguing that the doctrine of qualified immunity shields her from liability because she acted within her discretionary authority as a government official and Plaintiff has not plausibly pled facts that would overcome a qualified immunity defense. Motion at 2–5. Captain Green further argues that Plaintiff's false imprisonment claim must also be dismissed because Plaintiff has not plausibly alleged that Captain Green acted in bad faith or with a malicious purpose in continuing to detain Plaintiff. Motion at 12–13. In response, Plaintiff argues that because Captain Green acted with "intentional malice" in detaining Plaintiff after his bond was posted and then sanctioned the torture of Plaintiff by keeping him under constant, bright light 24 hours per day, Captain Green is not entitled to qualified immunity and is liable for false imprisonment. Response at 7, 12–16.

## II. STANDARDS OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The

---

[4] The Court observes that Plaintiff's counsel mislabeled every count in the Complaint after Count V. Had Plaintiff's counsel properly labeled each count, Plaintiff's false imprisonment claim would be Count VII and Plaintiff's claim for attorney's fees would be Count IX. Accordingly, the Court will refer to the above–mentioned Counts as Count VII and Count IX. The Court urges Plaintiff's counsel to be more careful when labeling counts in future filings.

purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff, and drawing all inferences in the plaintiff's favor. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008); *Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir. 1997). A complaint must also contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). In a civil rights action, more than mere conclusory allegations are required in order for a complaint to survive dismissal. *See Fullman v. Graddick*, 730 F.2d 553, 556 (11th Cir. 1984).

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal citation omitted). Entitlement to qualified immunity first requires that a public official establish that he or she was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). Once it has been established that the official was engaged in a discretionary duty, the burden shifts to the plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010). "This objective–reasonableness test provides qualified immunity protection to all but the plainly incompetent or those who knowingly violate the law."

*Soto v. City of North Miami*, No. 17-22090-Civ-Scola, 2017 WL 4685301, *6 (S.D. Fla. Oct. 17, 2017) (internal quotation omitted). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). A defendant pleading qualified immunity is entitled to dismissal "unless the plaintiff's allegations state a claim of violation of clearly established law." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Generally, courts are urged to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation—including on a motion to dismiss. *See Andrade v. Miami Dade Cty.*, No. 09-23220-CIV, 2010 WL 4069128 (S.D. Fla. Sep. 30, 2010). This two-pronged analysis may be done in whatever order deemed most appropriate. *Pearson v. Callahan*, 555 U.S. 223, 241 (2009).[5]

## III. DISCUSSION

Captain Green argues that she is entitled to qualified immunity because she acted within the scope of her official duties and did not violate any clearly established statutory or constitutional rights. Motion at 5–6. Captain Green also argues that Plaintiff's false imprisonment claim should be dismissed because Plaintiff has not plausibly alleged that Captain Green acted in bad faith or with malicious purpose in detaining him. Motion at 12. In response, Plaintiff argues that Captain Green knew that Plaintiff's bond was paid but illegally detained Plaintiff overnight anyway. Response at 7. Plaintiff adds that Captain Green acted with malice in falsely imprisoning Plaintiff even after knowing that Plaintiff's bond was paid. *Id.* at 8; Compl. ¶¶ 17–22. Finally, Plaintiff claims that Captain Green knowingly approved and

---

[5] In *Callahan*, the Court stated that federal judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236.

6

sanctioned conditions at the Main Jail that led to Plaintiff experiencing continuous sleep deprivation. *Id.* ¶¶ 45–49.

### 1. Counts I and II: Detention Following Posting of Bond

In Counts I and II, Plaintiff alleges that Captain Green violated Plaintiff's rights under the Fourth and Fourteenth Amendments for his continued detention after the posting of his initial bond. Compl. ¶¶ 38–44.

#### A. *Identifying The Precise Right Violated*

"[T]he first step in any § 1983 analysis requires identification of the precise right that is alleged to have been violated." *Alcocer v. Mills*, 906 F.3d 944, 947 (11th Cir. 2018). "Different rights prescribe different legal analyses, so accurately diagnosing the right at issue is critical to properly analyzing a § 1983 plaintiff's claims." *Id.* Although Plaintiff alleges that Captain Green's decision to detain him following the posting of bond violated both his Fourth and Fourteenth Amendment rights, the Court must decide which right, the Fourth or the Fourteenth, is most directly implicated by the facts alleged. *See id.* (citing *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013)). As stated by the Eleventh Circuit:

> The right involved makes a significant difference. If the facts implicate [the plaintiff's] Fourth Amendment right, to receive qualified immunity, [the d]efendants must have had probable cause, or at least arguable probable cause, to believe [that the plaintiff committed a crime]. If, on the other hand, the Fourteenth Amendment governs the fact pattern here, [the plaintiff] must show that [the d]efendants were deliberately indifferent to [the plaintiff's] right to be released.

*Id.* at 948.

Here, identifying the "most precise constitutional violation" requires the Court to establish the cause of Plaintiff's continued detention after the satisfaction of his initial bond. *See id.* at 952. Plaintiff secured bond on March 19, 2018 at 9:54 p.m. for the misdemeanor offense of trespassing on school grounds and alleges that he would have been released immediately

thereafter if not for certain orders by Captain Green and other jail staff to continue Plaintiff's detention. Compl. ¶¶ 17–22.

The Eleventh Circuit's recent opinion in *Alcocer* is instructive to the Court's analysis. There, the plaintiff was arrested and detained for driving with a suspended license, a misdemeanor offense. 906 F.3d at 947. After posting bond, the county jail continued to detain her because jail officers received an alert from the United States Immigration and Customs Enforcement ("ICE") suggesting that the plaintiff might be present in the United States illegally. *Id.* Although the plaintiff was not in the country illegally, jail staff released her after she spent 26 hours in custody and only after ICE confirmed that the plaintiff was not present in the United States without authorization. *Id.* at 950. The plaintiff sued county jail employees for violating her rights under both the Fourth and Fourteenth Amendments, and the employees moved for summary judgment, invoking qualified immunity. *Id.* at 948.

The district court found that the Fourth Amendment right to be free from unreasonable seizures governed the case, and that the burden was on the defendants to show that they had arguable probable cause to believe that the plaintiff had committed a crime by being present in the United States without authorization. *Alcocer v. Bulloch Cty. Sheriff's Office*, CV 615–94, 2017 WL 4386969, at *6–*7 (S.D. Ga. Sept. 29, 2017), *aff'd in part*, 906 F.3d 944. Concluding that the defendants did not establish probable cause for detaining the plaintiff, the district court denied the defendants' summary judgment motion on the basis of qualified immunity. *Id.* at *7. The district court also dismissed the plaintiff's claims under the Fourteenth Amendment as duplicative of her Fourth Amendment claim. *Id.* at *8–*9.

The Eleventh Circuit, affirming the district court's decision in part,[6] held that the precise right allegedly violated by the defendants implicated the Fourth Amendment instead of the Fourteenth. *Id.* at 948. The Eleventh Circuit reasoned that although cases involving "over–detentions" could be brought under the Fourteenth Amendment, the facts of *Alcocer* more directly implicated the Fourth Amendment because (i) the plaintiff's detention was based upon facts that were not part of the probable cause that supported the plaintiff's original detention and (ii) the text of the Fourth Amendment "provide[d] an explicit source of protection for the right that [the d]efendants allegedly violated." *Id.* at 955.

Here, as in *Alcocer*, Plaintiff was arrested for a misdemeanor trespass offense and posted bond, but was nonetheless detained by jail staff, including Captain Green, overnight and until his subsequent bail hearing before Judge Kim Mollica. Compl. ¶¶ 17–22. Moreover, the "over–detention" cases considered by the Eleventh Circuit under the Fourteenth Amendment framework generally concerned administrative errors by jail staff that led to continued detentions following postings of bond. *See, e.g.*, *West v. Tillman,* 496 F.3d 1321, 1327 (11th Cir. 2007) (affirming grant of qualified immunity for officers who detained the plaintiff for an additional 23 days because of faulty, though unintentional, administration of bond–notification); *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (affirming grant of qualified immunity for officers who detained the plaintiff for an additional seven hours due to administrative deficiency at the jail); *Cannon v. Macon Cty.*, 1 F.3d 1558, 1560–1561 (11th Cir. 1993) (affirming grant of qualified immunity for officers who mistakenly, but unintentionally, detained the plaintiff because the plaintiff had the same name as a person wanted in another state). Here, no such

---

[6] The Eleventh Circuit reversed the district court's denial of qualified immunity because the district court did not conduct an individualized assessment of each defendant's actions to determine whether either or both defendants were entitled to qualified immunity. *Id.* at 955.

errors were alleged; instead, Captain Green and her subordinates purposely detained Plaintiff after he posted bond.

Nonetheless, Plaintiff's initial arrest was, at least in part, based upon the same facts that supported Plaintiff's detention following his bond payment. As Plaintiff himself alleges, upon confronting Plaintiff for skateboarding on school property, BCSO Deputies "were preparing to issue a trespass warning to [Plaintiff]" but, "upon learning who he was . . . arrested [Plaintiff] instead." Compl. ¶ 17. Thus, unlike in *Alcocer*, where the plaintiff was arrested solely for driving with a suspended license, and then suspected of having committed another crime only while in custody, Plaintiff was detained after posting bond largely for the same reasons that he was initially arrested. While the *Alcocer* plaintiff continued to be detained because of a suspicion of another crime–illegal presence in the United States–Plaintiff was not suspected of any other crime and was detained after posting bond based upon a fear of Plaintiff "being released to the streets," with "the entire community" feeling "at unease." *See* Compl. ¶ 19; Motion at 8.

Although a close call, the Court finds that the precise right allegedly violated is Plaintiff's Fourteenth Amendment right to be free from continued detention after law enforcement should have known that he was entitled to release, rather than his Fourth Amendment right against unreasonable seizures. First, as stated, the reasons underlying Plaintiff's continued detention following the satisfaction of his bond are substantively the same reasons supporting probable cause for his initial arrest. This distinguishes the instant case from those like *Alcocer*, where the plaintiff was detained following the posting of bond because of suspicion of an unrelated or independent offense. 906 F.3d at 949–950; *see also C.F.C. v. Miami-Dade Cty.*, CASE No. 18-CV-22956-KMW, 2018 WL 6616030, at *18–*19 (S.D. Fla. Dec. 14, 2018) (holding that the Fourth Amendment governs over–detention cases involving alerts from ICE that request

10

continued detention following posting of bond); *Creedle v. Miami-Dade Cty.*, Case No. 17-CIV-22477-WILLIAMS, 2018 WL 6427713, at *25–*26 (S.D. Fla. Nov. 9, 2018) (same); *Morales v. Chadbourne*, 793 F.3d 208, 212 (1st Cir. 2015) (same).

Second, although *Alcocer* found that the Fourth Amendment provided an "explicit source of protection" against unreasonable seizures, it did so only "under the factual scenario [at hand]." 906 F.3d at 955. The Eleventh Circuit therefore did not issue a blanket ruling that all cases involving allegations of over–detention implicated the precise Fourth Amendment right against unreasonable seizures, and in fact explicitly acknowledged that certain over–detention cases can and do implicate the Fourteenth Amendment. *Id.* at 953–954 (citing *West*, *Case*, and *Cannon* as examples).

Third, *West*, *Case*, and *Cannon* all involved some sort of negligence on the part of jail administration in prolonging a plaintiff's detention. In contrast, Plaintiff here alleges that his post–bond detention was intentional and malicious. *See* Compl. ¶¶ 19, 21, 40. However, this distinction does not preclude a finding that the precise right alleged by Plaintiff falls under the Fourteenth Amendment. In fact, Plaintiff's central claim in Counts I and II–that Captain Green violated his right to be free from continued detention after being put on notice of his alleged entitlement to release–is almost identical in substance to those made by the plaintiffs in *West*, *Case*, and *Cannon*.

The Court thus finds that the precise right allegedly violated by Captain Green was Plaintiff's Fourteenth Amendment right to be free from detention without due process of the law. Accordingly, Count I of the Complaint, alleging a Fourth Amendment violation of Plaintiff's right against unreasonable seizures, is hereby dismissed.[7] The burden therefore falls on Plaintiff

---

[7] The *Alcocer* court did not explicitly state that if a § 1983 plaintiff alleged multiple constitutional violations based upon a claim of over–detention, the identification of the most

to show that Captain Green was deliberately indifferent to Plaintiff's right to be released. *See Alcocer*, 906 F.3d at 948.

B.   *Deliberate Indifference*

To demonstrate that Captain Green acted with deliberate indifference to Plaintiff's right to be released, Plaintiff must plausibly allege that Captain Green: (i) had subjective knowledge of a risk of serious harm, consisting of continued detention when Plaintiff was entitled to be released; (ii) disregarded that risk; and (iii) did so by conduct that is more than mere negligence. *See West*, 496 F.3d at 1327; *Iqbal*, 556 U.S. at 678.

Plaintiff alleges that he posted bond and attempted to leave the Main Jail, but that Captain Green and her subordinates refused to release him. Compl. ¶¶ 19, 21, 40. Although Plaintiff does not explicitly allege that Captain Green "had subjective knowledge" that Plaintiff posted bond and was therefore entitled to be released, such knowledge can be inferred from Plaintiff's alleged attempt to leave custody and Captain Green's subsequent denial of same. *See id.*

---

precise constitutional violation (*i.e.*, the Fourth Amendment right against unreasonable seizures) would necessarily result in the dismissal of the remaining claim (*i.e.,* the Fourteenth Amendment right to due process against unreasonable detention). However, the Court fails to see how the lesser–precise constitutional claim in the instant case could survive once the precise right is identified. If the Court, after identifying the precise constitutional violation at issue, proceeded to analyze the remaining constitutional violations under their respective standards, such analyses would effectively render moot the required exercise of identifying the most precise right at issue. *See* 906 F.3d at 947. For example, if the Court found, as it did, that the precise right at issue in the instant case was Plaintiff's Fourteenth Amendment right to be free from unlawful detention, it would proceed to analyze Plaintiff's § 1983 claim under the requisite deliberate indifference framework. *See id* at 947–48. However, if the Court also went on to analyze whether Captain Green violated Plaintiff's Fourth Amendment right against unreasonable seizures under a probable cause standard, the Court would effectively render its "precise right" analysis moot because both claims would have been evaluated under their respective standards regardless of any precise right identification. *See id.* (stating that the "precise right" inquiry is "critical" to analyzing a § 1983 claim and that it "make[s] a significant difference" to the ultimate analysis). In affirming the district court's dismissal of the plaintiff's Fourteenth Amendment claims, the *Alcocer* court stated that under the facts alleged, the Fourth Amendment "govern[ed]," suggesting only one governing standard over the plaintiff's over–detention claim. 906 F.3d at 955. Similarly, because the Fourteenth Amendment "governs" the instant dispute, Plaintiff's Fourth Amendment claim under Count I is dismissed. *See id.* at 955.

Moreover, Captain Green states that "there was concern over releasing Plaintiff when he posted the scheduled bond," suggesting that Captain Green may have known that Plaintiff posted bond and was therefore entitled to release. Motion at 8. Because the Court must, at this early stage, draw all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that Captain Green knew that Plaintiff was entitled to release upon paying bond, but nonetheless ordered his continued detention. *See Williams*, 102 F.3d at 1302.

Plaintiff has also plausibly alleged that Captain Green disregarded the risk of holding Plaintiff in custody after he was entitled to be released. Captain Green states that, following Plaintiff's initial bond post on March 18, 2018 at 9:54 p.m., "there was concern over releasing Plaintiff *based on Nurse Kite's note*," which stated that Plaintiff "has no telephone, no car, and no responsible transportation," and that he was therefore "at risk of being released to the streets, and has the entire community at unease." Motion at 8 (emphasis added); Compl. ¶ 19. However, Plaintiff alleged that Nurse Kite did not issue her report until 11:00 p.m. Compl. ¶ 19. Taking Plaintiff's allegations as fact, as the Court must, jail staff could not have relied upon Nurse Kite's report to detain him after his post of bond because Nurse Kite's report was not issued until about an hour after Plaintiff posted bond.[8] Plaintiff has thus plausibly alleged that Captain Green, without the benefit of any additional information other than Plaintiff's initial arrest, disregarded the risk of detaining Plaintiff after he was entitled to leave.

---

[8] The Court observes that Plaintiff did not specify whether and when Nurse Kite examined Plaintiff in person, nor did he allege any details on the nature or scope of the examination. The only detail provided about Nurse Kite's report is that she believed Plaintiff to be "at risk of being released," ostensibly upon the posting of bond, and that he "ha[d] the entire community at unease." Compl. ¶ 19. Neither of these statements, however, appeared to have required any kind of medical or professional confirmation. That Plaintiff was set to be released was a fact of his posting of bond. Moreover, the contention that Plaintiff "ha[d] the entire community at unease" appears to be one more readily asserted by the BCSO than Nurse Kite.

Finally, Plaintiff has plausibly alleged that Captain Green's decision to detain Plaintiff following his posting of bond amounted to more than mere negligence. In *West*, the Eleventh Circuit held that a bureaucratic failure on the part of several jail employees to properly process the plaintiffs' post–bond releases did not amount to deliberate indifference to the plaintiffs' right to be released upon posing bond, but rather a cause of budget and staffing cuts within the jail. 496 F.3d at 1333 ("[n]o one is entitled to an error–free bureaucracy."). Here, however, Plaintiff alleges that Captain Green had subjective knowledge that Plaintiff had posted bond, yet effectively disregarded the bond payment and continued Plaintiff's detention nonetheless. Thus, unlike the jail staff in *Case, West*, or *Cannon*, the decision by Captain Green and her subordinates to continue Plaintiff's detention following his posting of bond, as alleged by Plaintiff and implicitly conceded by Captain Green, was intentional, and therefore rose above the "mere negligence" required to maintain a claim for deliberate indifference to Plaintiff's right to be released.

Because Plaintiff has plausibly alleged that Captain Green was deliberately indifferent to his right to be released upon his satisfaction of bond, the Court denies Captain Green's motion to dismiss Count II of the Complaint.

2. Count III: Alleged Mistreatment Following Bond Hearing

Captain Green moves to dismiss Plaintiff's claim that his conditions of pre–trial confinement, which led to sleep deprivation, violated Plaintiff's rights to due process under the Fourteenth Amendment.[9] First, Captain Green claims that the conditions of Plaintiff's

---

[9] Plaintiff also claims that he was involuntarily committed pursuant to the Baker Act without adequate justification, but does not explain in any detail why this is so. Compl. ¶ 46. Plaintiff has thus failed to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Court therefore dismisses Plaintiff's due process claim on this ground pursuant to Fed. R. Civ. P. 12(b)(6).

confinement did not violate Plaintiff's Fourteenth Amendment rights, and that even if they did, the qualified immunity doctrine shields her from liability for those violations. Motion at 8–12. In response, Plaintiff argues that the conditions of his confinement constituted torture, and therefore demonstrated deliberate indifference to his rights. Response at 12. Plaintiff further argues that Captain Green is not shielded by qualified immunity because she violated established law forbidding her from subjecting Plaintiff to sleep deprivation.

The Court need not determine whether a constitutional violation occurred because Captain Green is entitled to qualified immunity as to Plaintiff's claim regarding his pre–trial confinement. *See Callahan*, 555 U.S. at 241 (permitting district courts to evaluate whether § 1983 defendants violated clearly established law as the initial step in a qualified immunity analysis). First, it is not in dispute that Captain Green's alleged conduct was done in her "discretionary duty" as a public official. *See Gagnon*, 626 F.3d at 562. The burden thus shifts to Plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Id.* As Plaintiff concedes, neither the United States Supreme Court, the Florida Supreme Court, nor the Eleventh Circuit has held that the specific actions or omissions allegedly undertaken by Captain Green following Plaintiff's bond hearing that resulted in Plaintiff's sleep deprivation violated clearly established law. Response at 15; *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). The cases cited by Plaintiff for the contention that courts have, in one form or another, permitted causes of actions for sleep deprivation to proceed are inapposite to the instant analysis.[10] The Court therefore grants Captain Green's motion to dismiss Count III of the Complaint.

---

[10] For instance, the defendant in *Hernandez v. Ryan*, No. 09–20119–CIV., 2009 WL 3462178, at *1–*2 (S.D. Fla. Oct. 22, 2009) did not assert a qualified immunity defense, arguing instead that

### 3. Count VII: False Imprisonment

Captain Green moves to dismiss Plaintiff's Florida state law claim for false imprisonment because of Plaintiff's failure to plausibly allege that Captain Green "acted in bad faith or with malicious purpose." Motion at 12–13; Fla. Stat. § 768.28(9)(a) (precluding personal liability in tort for state agents, employees, or officers unless the state agents, employees, or officers "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."). Plaintiff argues that Captain Green acted out of "intentional malice" when she failed to release Plaintiff upon paying bond. Response at 7.

"A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law." *Ortega v. Christian*, 85 F.3d 1521, 1527 (11th Cir. 1996) (internal citation omitted). Such a claim "requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Id.* Moreover, under Florida law, the plaintiff must additionally allege that the defendant "actively participated" in the restraint and that the restraint was "unreasonable and unwarranted under the circumstances." *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. 1st Dist. Ct. App. 2003) (internal citation omitted).

---

the plaintiff failed to adequately allege damages and administratively exhaust his remedies pursuant to the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, *et seq.* Same with *Bracewell v. Lobmiller*, 938 F. Supp. 1571, 1579 (M.D. Ala 1996), which considered neither a qualified immunity defense nor a contention that sleep deprivation through consistent check–ups and bright lighting constituted deliberate indifference to a detainee's rights. Although the Court is aware of cases stating that constant illumination can amount to a constitutional violation and thus provide a basis for a § 1983 action, *see e.g., Keenan v. Hall*, 83 F.3d 1083, 1090–1091 (9th Cir. 1996), those cases do not constitute binding precedent in this Court for qualified immunity purposes. *See Nugent,* 483 F.3d at 1237. Moreover, those cases are distinguishable from the instant case because, as Plaintiff himself alleges, Captain Green acted on a recommendation from the Broward County Medical Center to keep Plaintiff on suicide watch. *See* Compl. ¶ 47.

16

Finally, false imprisonment claims fail if there was probable cause for a plaintiff's arrest. *See Perez v. Harrelson*, Case No. 6:15-cv-879-Orl-37GJK, 2016 WL 866590, at *6 n.5 (M.D. Fla. Mar. 7, 2016) (internal citation omitted).

To establish a due process violation, Plaintiff must demonstrate that Captain Green acted with deliberate indifference in continuing to detain Plaintiff after his posting of bond. *See id.* As established *supra*, Plaintiff has plausibly alleged that Captain Green acted with deliberate indifference to Plaintiff's right against continued detention following his posting of bond.[11]

Plaintiff has also plausibly alleged both common law and Florida law false imprisonment violations. Taking Plaintiff's allegations as fact, Captain Green intended to confine Plaintiff after his alleged entitlement to release, and Plaintiff was, in fact, confined and aware of his confinement. *See Campbell*, 586 F.3d at 840. Moreover, because Captain Green allegedly approved Plaintiff's continued detention, and knew of his potential entitlement to release, Plaintiff has plausibly alleged that Captain Green "actively participated" in Plaintiff's confinement and that the confinement was "unreasonable" given Plaintiff's satisfaction of bond. *See Spears*, 848 So. 2d at 1178

Finally, it is not clear that Captain Green had probable cause to detain Plaintiff after he posted bond. As alleged, and unlike the plaintiff in *Alcocer*, Plaintiff was detained after posting bond, not out of any suspicion of having committed an independent offense, but out of a fear that Plaintiff's release will cause greater "unrest" in the community. Captain Green does not explain how such a fear, without more, provided her probable cause to detain Plaintiff after his alleged

---

[11] The Court holds that, at this early stage, Fla. Stat. § 768.28(9)(a), precluding public officers from liability for official acts done in "bad faith" or "a manner exhibiting wanton and willful disregard of human rights. . ." does not shield Captain Green from liability for false imprisonment. Although Captain Green asserts that her conduct did not rise to the level of "bad faith," she does not explain how the standard under § 768.28(9)(a) materially differs from the deliberate indifference standard under the Fourteenth Amendment.

entitlement to release. The Court thus declines to find, at this early stage, that Captain Green had probable cause to detain Plaintiff following his posting of bond.

    4.    <u>Count IX: Attorney's Fees</u>

As discussed *supra*, Plaintiff has plausibly alleged that Captain Green was deliberately indifferent to Plaintiff's right to be released following his posting of bond. Successful § 1983 plaintiffs may recover attorney's fees and punitive damages upon a showing that the defendant displayed "reckless . . . disregard" of the plaintiffs' constitutional rights. *Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 186 (11th Cir. 2012) (internal citation omitted). The Court declines to conclude at this stage in the proceedings that Plaintiff categorically cannot show that Captain Green displayed "reckless . . . disregard" of Plaintiff's right to be released upon his satisfaction of bond. The Court therefore denies Captain Green's motion to dismiss Count IX of the Complaint.

## IV. CONCLUSION

Accordingly, UPON CONSDIERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, Captain Green's Motion to Dismiss (ECF No. 18) Counts I and III of the Complaint is GRANTED. However, Captain Green's Motion to Dismiss Counts II, VII and IX of the Complaint is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>7th</u> day of January, 2019.

                                                   K. MICHAEL MOORE
                                                   UNITED STATES CHIEF DISTRICT JUDGE