UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60995-CIV-ALTMAN/Hunt

ZACHARY CRUZ,

    Plaintiff,
v.

CAPTAIN SHEREA GREEN,
*et al.*,

    Defendants.
_____/

## ORDER

**THIS MATTER** came before the Court on the Defendant's Motion to Enforce Settlement (the "Motion") [ECF No. 124], filed on May 10, 2019. The Plaintiff filed a Cross-Motion to Enforce the Settlement (the "Response") [ECF No. 126] on May 14, 2019. And the matter became ripe on May 21, 2019, when the Defendant filed her reply (the "Reply") [ECF No. 129]. The Court held a hearing on June 11, 2019, at which the parties presented their oral arguments [ECF No. 132].

### Background

The motions arise from a settlement offer the Defendant made to the Plaintiff on April 1, 2019. *See* Mot. Ex. A (the "Offer") [ECF No. 124-1]. That Offer—drafted by the Defendant—attempted to resolve the Plaintiff's claims in exchange for a $3,000 payment. The parties' dispute concerns *which* claims the settlement ultimately resolved.

On April 7, 2019, the Plaintiff "accepted" the Defendant's offer by emailing the Defendant his "Acceptance of Offer." *See* Mot. Ex. B (the "Acceptance") [ECF No. 124-2]. According to the Defendant, this "acceptance" resulted in a valid contract, which settled all claims against the Defendant, Captain Sherea Green, along with any claims that could have been

brought against the Sheriff and the Sheriff's employees. *See generally* Mot. For his part, the Plaintiff agrees that his "acceptance" resulted in a binding contract, but argues that the agreement settled only his claims against the Defendant, Captain Green. *See generally* Resp.

**The Offer**

The parties' dispute hinges on the meaning of the following paragraphs from the proposal for settlement:

> 2. The claims this proposal for Settlement is attempting to resolve are any and all claims made by Plaintiff, Zachary Paul Cruz, against Defendant, Captain Sherea Green, in this action (including punitive damages and costs and attorney's fees), or which could have been made by Plaintiff against the Sheriff or his employees related to the events included in the instant lawsuit.
>
> . . .
>
> 4. The particular and relevant conditions of the Proposal are that, if accepted by the Plaintiff, within the time allowed by law, Defendant will pay the proposed settlement to Plaintiff within thirty (30) days from the date of the entry of judgment under Rule 54 of the Federal Rules of Civil Procedure, as well as providing Defendant with an <u>executed release</u> of all claims (including claims for punitive damages, costs, interest and attorney's fees) against Defendant.
>
> 5. The total amount of the Proposal for Settlement is **THREE THOUSAND DOLLARS ($3,000).** There are no non-monetary terms in the Offer, other than those stated in paragraph 4 above regarding the entry of judgment dismissing Plaintiff's claims against Defendant, Captain Sherea Green and Release.

Offer ¶¶ 2–5.

The Defendant argues that paragraph 2—and, specifically, its second clause—releases all claims against both (1) the Defendant and (2) the Sheriff and his employees. *See* Mot. at 4. The Plaintiff responds that paragraph 2 is, for two reasons, not an essential term of the agreement. *First*, the Plaintiff says that, because the clause includes the word "attempting," it is merely a precatory statement of aspiration and thus imposed no duties on the Plaintiff. *See* Resp. at 4. *Second*, the Plaintiff notes that paragraph 5 specifically delimits the scope of the Plaintiff's

2

obligations to the non-monetary terms listed in paragraph 4; and those terms, the Plaintiff points out, *do not* include the limitations set out in paragraph 2. *Id.* at 5.

In her Reply, the Defendant suggests, for the first time, that, if the Court should disagree with her interpretation of the contract, the Court should find, not that the Plaintiff's exegesis is correct, but that the contract is *unenforceable*—unenforceable, she says, for lack of mutual assent. *See* Reply at 3. At oral argument, the Defendant added—again for the first time—that, if the Court were inclined to reject her position, then the only natural inference would be that she entered into the agreement by way of unilateral mistake. But, unfortunately for the Defendant, arguments raised for the first time in reply (or at oral argument) are waived. *See Guy Roofing, Inc. v. Angel Enterprises, LLC*, No. 17-14081-CIV-ROSENBERG, 2017 WL 8890873, at *3 (S.D. Fla. Sept. 6, 2017) (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)).

To prove the existence of a contract, a party must establish the following four elements: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)). Under Florida law, which governs this dispute, a court must interpret a contract in accordance with its plain and ordinary meaning when the terms of that contract are clear and unambiguous. *See Rigel v. Nat'l Casualty Co.*, 76 So. 2d 285, 286 (Fla. 1954). As the Florida Supreme Court has said—and as the Eleventh Circuit has oft-repeated—*the words* of a contract provide the best evidence of the parties' intent. *See Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996) (citing *McGhee Interests, Inc. v. Alexander Nat'l Bank*, 102 Fla. 140, 135 (Fla. 1931)). In determining whether any ambiguity exists in a contract, a court should give the words their natural and ordinary meaning. *Emergency Assoc. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995). Notably, an ambiguity does not

3

exist merely because the contract requires interpretation. *See Key*, 90 F.3d at 1549 (citation omitted).

The Defendant's Offer here was clear and unambiguous: it proposed settling only the claims the Plaintiff had brought against the Defendant, Captain Green, in exchange for a payment of $3,000. On this point, paragraphs 4 and 5 are pellucid: "The particular and relevant conditions of the Proposal are that . . . Defendant will pay the proposed settlement to Plaintiff," and the Plaintiff will provide "Defendant with an <u>executed release</u> of all claims (including claims for punitive damages, costs, interest and attorney's fees) against Defendant." Offer ¶ 4. "There are no non-monetary terms in the Offer, other than those stated in paragraph 4 above regarding the entry of judgment dismissing Plaintiff's claims against Defendant, Captain Green and Release." *Id.* ¶ 5. The word "Defendant"—singular—is used four times over the course of these two paragraphs, and neither paragraph makes any mention of any other "Defendants." More importantly, the Offer several times defines the word "Defendant"—again, singular—as referring to "Captain Sherea Green." *Id*. ¶¶ 1, 3, 5. The word never refers to anyone else. In fact, the entire agreement, save for one clause in one sentence, implicates only the settlement of claims against a single "Defendant." *See* Offer ¶ 1 ("This is a Proposal for Settlement by Defendant, CAPTAIN SHEREA GREEN . . . ."); *id.* ¶ 3 ("Plaintiff's acceptance of this offer shall affect[sic] an entry of judgment . . . dismissing with prejudice all of Plaintiff's claims against Defendant, CAPTAIN SHEREA GREEN."); *id.* ¶ 4 (describing release as an "<u>executed release</u> of all claims (including claims for punitive damages, costs, interest and attorney's fees) against Defendant."); *id.* ¶ 5 ("There are no non-monetary terms in the Offer, other than those stated in paragraph 4 above regarding the entry of judgment dismissing Plaintiff's claims against Defendant, Captain Sherea Green and Release.")

4

Only one paragraph—paragraph 2—plausibly refers to claims against someone other than Captain Green. *See* Offer ¶ 2. That paragraph describes, in general terms, what the proposal was "attempting to" accomplish—namely, to resolve "any and all claims made by [the Plaintiff] against [the Defendant], in this action . . . or which could have been made by Plaintiff against the Sheriff or his employees related to the events included in the instant lawsuit." *Id.*

A plain reading of paragraphs 2, 4, and 5 together compels only one construction—that the essential terms of the agreement are laid out in paragraphs 4 and 5, and that paragraph 2 declares only what the parties were "attempting to" accomplish. *See* Offer ¶ 2. Webster's Dictionary defines "to attempt" as "to make an effort to do, accomplish, solve or effect." *See* Attempt, Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/attempt (last visited June 24, 2019). And Black's Law Dictionary defines an "attempt" as the "act or an instance of making an effort to accomplish something, [especially] without success." Attempt, Black's Law Dictionary (11th ed. 2019). Both definitions comport with the word's common usage.

Paragraph 2 of the proposal for settlement thus *made an effort to* settle—"without [complete] success"—a certain category of claims, which included both the claims actually brought against Captain Green and any claims that could have been brought against the Sheriff or his employees. But it chose to effectuate that effort only through the explicit terms of paragraphs 4 and 5. Put another way, paragraph 2 could not form the basis of what the proposal *actually* settled, as the Defendant suggests, because, by its very terms, it outlines only what the proposal *attempted* to settle. The clause is thus precatory in nature and imposes no obligations on the parties. *Cf. Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1239 (M.D. Fla. 2011) ("The language of the [clause] appears precatory and indicative of no

duty on the part of [the offeree].") In short, the clause in paragraph 2 upon which the Defendant's entire motion depends was not an essential term of the proposal for settlement.

Paragraphs 4 and 5, on the other hand, plainly set forth the essential and operative terms of the Offer: they require a payment of $3,000 in exchange for the release of all claims against Captain Green. *See Nichols v. Hartford Ins. Co. of the Midwest*, 834 So. 2d 217, 219 (Fla. 1st DCA 2002) ("The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis."). And, given the limiting language of paragraph 5, paragraph 4's succinct list of binary duties is unmistakably exhaustive. *See* Offer ¶ 5 ("There are no non-monetary terms in the Offer, other than those stated in paragraph 4 regarding the entry of judgment dismissing Plaintiff's claims against Defendant, Captain Sherea Green and Release.").

Even if paragraph 2 did include an essential term, the Offer would nevertheless remain unambiguous. Where "contractual provisions conflict, but significantly, the contract itself provides means for reconciling the conflict, [the Court] is obliged to apply the contract's internal conflict-resolution mechanism." *Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087, 1093 (11th Cir. 2018) (citing *Columbia Cas. Co. v. S. Flapjacks, Inc.*, 868 F.2d 1217, 1221 n.1 (11th Cir. 1989)). Paragraph 5 contains just such a conflict-resolution mechanism—restricting the non-monetary terms of the agreement to the conditions laid out in paragraph 4. As such, even if paragraph 2's precatory language were obligatory, the Court would still find that the terms listed in paragraph 4 control over the terms set forth in paragraph 2— thereby dissipating any ambiguity. *Cf. Lloyds Underwriters v. Netterstrom*, 17 So. 3d 732, 735 (Fla. 1st DCA 2009) (where contractual "terms can be reconciled, the clear language of the contract controls").

Indeed, even if this internal conflict-resolution mechanism did not exist, the straightforward application of three well-trodden canons of construction would yield the same result. *First*, "to ascertain the intent of the parties, the court will regard the total instrument and not particular provisions nor disjointed parts." *Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 315–316 (Fla. 2nd DCA 1963). By interpreting paragraph 2's aspirational language as precatory, only the Court's reading "regard[s] the total instrument." The Defendant's reading, by contrast, wholly ignores paragraphs 4 and 5 of the Offer, rendering them superfluous—something the Supreme Court has repeatedly admonished courts not to do. *See Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon [against surplusage] is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("We are thus reluctant to treat statutory terms as surplusage in any setting."). *Second*, when two contractual terms conflict, specific terms control over general ones. *See World Fuel Servs., Inc. v. John E. Retzner Oil Co., Inc.*, 234 F. Supp. 3d 1234, 1239 (S.D. Fla. 2017). Here, paragraphs 4 and 5 *specifically* delineate each party's obligations, whereas paragraph 2 limns only the *general* aspirations of the offeror. Accordingly, paragraphs 4 and 5 control over paragraph 2. *Third*, if any ambiguity remains after applying the canons of construction, that ambiguity should be construed against the drafter—in this case, the Defendant. *See Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1247 (11th Cir. 2002). The Defendant has produced no extrinsic evidence to overcome the thrust of these canons.

This construction of the Offer is further buttressed by Florida Rule of Civil Procedure 1.442. *See* Offer at 1. Rule 1.442, which governs the form and content of proposals for settlement under Florida law, requires that a valid proposal:

(A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
(B) state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F);
(C) state with particularity any relevant conditions;
(D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;
(E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
(F) state whether the proposal includes attorneys' fees and whether attorneys' fee [sic] are part of the legal claim; and
(G) include a certificate of service in the form required by Florida Rule of Judicial Administration 2.516.

Fla. R. Civ. P. 1.442 (2013).

Except for paragraph 2, every other paragraph of the Offer satisfies at least one of the requirements of the statute. Paragraph 1, for example, meets the requirement of Section A by naming the party "making the proposal and the party to whom the proposal is being made." *See* Offer ¶ 1; Fla. R. Civ. P. 1.442(A). Paragraph 3, for its part, addresses the requirement in Section B that a proposal state which claims and damages it resolves. *See* Offer ¶ 3 ("The Plaintiff's acceptance of this Offer shall affect[sic] an entry of judgment under Rule 54 of the Federal Rules of Civil Procedure dismissing with prejudice all of Plaintiff's claims against Defendant, CAPTAIN SHEREA GREEN."). Paragraph 4 lists the "particular and relevant" conditions of the proposal, as required by Section C. *See id.* ¶ 4. Addressing the elements of Section D, paragraph 5 lays out "the total amount of the proposal" and describes "with particularity all nonmonetary terms." *See id.* ¶ 5. Paragraph 6 discusses punitive damages, as required by Section E. *See id.* ¶ 6. Finally, paragraph 7 establishes the conditions of Section F by discussing attorneys' fees. *See id.* ¶ 7. Paragraph 2, by contrast, addresses none of Rule 1.442's requirements precisely because it

contains none of the essential terms of the agreement—because, to put it another way, it is *non-essential*.

The proposal for settlement is therefore unambiguous: it offered the Plaintiff $3,000 in exchange for a release of the Plaintiff's claims against the Defendant, Captain Green. The Defendant's *post hoc* reliance on paragraph 2 is unpersuasive. The plain and ordinary meaning of that clause expresses nothing more than the offeror's aspirations: it imposes no duties; it sets no obligations; it invited no assent.

## The Acceptance

For an acceptance to result in a contract, it "is essential that the parties mutually agree upon the material terms." *Holloway v. Gutman*, 707 So. 2d 356, 357–58 (Fla. 5th DCA 1998) (citing *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92, 92–94 (Fla. 1910)). "So long as any essential matters are left open for further consideration, the contract is not complete . . . ." *Strong & Trowbridge Co.*, 54 So. at 93–94. The offeree may not "accept conditionally, or introduce[] a new term into the acceptance." *See id.* Rather, a meeting of the minds, or mutual assent, is "a prerequisite for the formation of any contract." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) (citing *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989)). And mutual assent is required "as to all essential terms." *King v. Bray*, 867 So. 2d 1224, 1228 (Fla. 5th DCA 2004) (citing *David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990)).

The essential terms of the Defendant's April 1st Offer were that, in exchange for a $3,000 payment, the Plaintiff would execute a release of all claims against the Defendant, Captain Green. *See* Offer ¶¶ 4–5. On April 7, 2019, the Plaintiff responded with an email that read as follows:

Ms. Leahy:

> Please find attached our Notice of Acceptance of Proposal for Settlement. By this email, including the attached acceptances, Plaintiff hereby accepts the attached Proposal for settlement.
>
> Should you have any questions or concerns, please do not hesitate to contact us.
>
> Sincerely,

Acceptance at 1.

In the attachment, titled "Plaintiff's Acceptance of Defendant Sherea Green's Second Proposal for Settlement," *id.* at 2, the Plaintiff copied, almost verbatim, the essential terms of the Defendant's Offer. *Compare* Acceptance ¶¶ 3–4 *with* Offer ¶¶ 4–5. The Acceptance did not, to be sure, include the language in paragraph 2 of the Offer. In her Reply (though, again, not in her Motion), the Defendant, relying on this discrepancy, argues that the Plaintiff's refusal to assent to paragraph 2's limitations constituted both a rejection of the Offer and the proposal of a *counter*-offer. *See generally* Reply. Again, by not raising this argument in her motion, the Defendant has waived it. *See Guy Roofing, Inc.*, 2017 WL 8890873, at *3 (citing *In re Egidi*, 571 F.3d at 1163). In any event, the argument is unpersuasive.

Florida courts employ an objective test to determine whether a contract is enforceable. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Vision Fin. Partners, LLC*, 232 F. Supp. 3d 1287, 1293 (S.D. Fla. 2017). Under that test, it is the objective (rather than the subjective) intent of the parties, manifested in the words they express in their agreement, that determines enforceability. *See McGhee Interests, Inc. v. Alexander Nat'l Bank*, 135 So. 545, 547 (Fla. 1931). To compel the enforcement of an agreement, its terms must, as to each essential element, be sufficiently specific and mutually agreed upon. *Don L. Tullis and Assoc., Inc. v. Benge*, 473 So. 2d 1384, 1387 (Fla. 1st DCA 1985). But "[u]ncertainty as to nonessential terms or small items

will not preclude the enforcement of a settlement agreement." *Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002). In the end, "settlement agreements are highly favored and will be enforced whenever possible." *See Carpaneda v. Quayside Place Partners, LLP*, No. 09-20740-CIV-SEITZ, 2010 WL 2696958, at *2 (S.D. Fla. July 7, 2010)

As the Court has explained, the aspirational language of paragraph 2 of the Defendant's Offer was non-essential. *See supra*, Sec. I. As such, the Plaintiff's decision not to include it in his Acceptance has no bearing on the agreement's formation. *C.f. Carpaneda*, 2010 WL 2696958, at *2 (enforcing settlement agreement where agreement "provided the exact amount that Defendant would pay . . . [,] dictated how the Parties would bear the fees and costs . . .[, and] provided the method by which the action would be dismissed" despite not agreeing on contingencies of agreement). By repeating in his Acceptance the *essential* terms of the Defendant's Offer—*viz*, that the Defendant would pay $3,000 in exchange for a release of all claims against the Defendant—the Plaintiff validly and unambiguously expressed his assent to the proposal. At that moment, a binding contract was formed.[1]

*          *          *          *          *          *

The Court does not doubt the Defendant's representation, made at oral argument, that she did not intend to enter into a contract that released only the Plaintiff's claims against her—thus leaving open the possibility, now reified, that the Plaintiff might turn around and sue the individual officers. But the "making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957) (quoting O. W. Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 464

11

(1897)). The parties said the same thing here. The Defendant, in a document she drafted, laid out what she considered to be the "particular and relevant" terms of her proposal. Offer ¶ 4. The Plaintiff then repeated and accepted those terms in his Acceptance. Accordingly, the Court hereby

      **ORDERS AND ADJUDGES** as follows:

1. The Defendant's Motion to Enforce Settlement [ECF No. 124] is **DENIED**
2. The Plaintiff's Cross-Motion to Enforce Settlement [ECF No. 126] is **GRANTED.**
3. The case will remain **CLOSED**.
4. Any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 28th day of June, 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[1] There is no dispute that adequate consideration was exchanged.